IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Certain Interested Underwriters at Lloyd's London, subscribing to certificate no. GH8780532, | C/A No.: 3:10-cv-01382-JFA |
| Plaintiff, | |
| vs. | ORDER |
| Earl Cooper and Nicholas Hoover, | |
| Defendants. | |
| Earl Cooper, | |
| Counter Claimant, | |
| vs. | |
| Certain Interested Underwriters at Lloyd's London, subscribing to certificate no. GH8780532, | |
| Counter Defendant. | |

      This case arises out of a fire that occurred at a property owned by the defendants, Earl Cooper and Nicholas Hoover. Certain Interested Underwriters at Lloyd's London, subscribing to certificate no. GH8780532 ("Underwriters") issued an insurance policy on the property before it was damaged by the fire. Underwriters brought this action seeking rescission of the insurance contract and a declaratory judgment of no coverage. Defendant Cooper has counterclaimed, alleging breach of contract and bad faith on the

1

part of Underwriters. Defendant Hoover has not answered the Complaint. He is currently in default.

On December 2, 2011, Underwriters filed a Motion for Summary Judgment Partial. On December 30, 2011, Cooper responded to the motion and filed a Motion to Strike. This court held a hearing on January 19, 2012 where the court heard from both parties regarding these pending motions. After reviewing the parties' arguments, this court denies, in part, and grants, in part, Underwriters' Motion for Summary Judgment Partial. This court further denies Cooper's Motion to Strike.

## I.     Factual and Procedural History

Defendants Cooper and Hoover own the property at issue in this case. They bought the property in 2005 and began leasing it to tenants who operated the property as a nightclub. In April of 2009, their tenant broke the lease, and Cooper began operating the building as a "teen club," sometimes renting the building to private parties and sometimes operating the club himself.

When tenants were leasing the property, Cooper and Hoover had the tenants maintain an insurance policy on the property. However, once Cooper was operating the nightclub himself, he had to get an insurance policy for the property. On May 20, 2009, Cooper applied for a three-month commercial property and commercial general liability policy of insurance with Underwriters through the Jesse T. Reese Agency in Columbia. Cooper spoke with Tim Reese at the insurance agency on the phone about the details of the property. There seems to be some dispute as to whether Cooper described the

building as vacant or as a venue occasionally used for special events.[1]  Nevertheless, Reese filled out an insurance application for Cooper, which described the property as vacant.  The application further stated that no bankruptcies, tax, or credit liens had been filed against the applicant in the last five years although Cooper never discussed with Reese whether that was true.  Cooper signed the insurance application, apparently without reviewing its contents.  Underwriters then issued a policy of commercial property and commercial general liability insurance to Cooper.

On the night of May 24, 2009, Cooper was allegedly in Myrtle Beach and left the property in the care of Travis Taylor, an employee.  According to Taylor, he closed the nightclub in the early morning hours of May 25, 2009.  Hours later, firefighters responded to a fire at the property.  According to Richland County fire Marshall Patrick Bradshaw, firefighters who responded to the fire had to force entry to the building because the doors were locked.  Bradshaw investigated the cause of the fire and found long burn patterns on the carpets and two gasoline cans.  According to Bradshaw's Affidavit, "[t]hese burn patterns were caused by the ignition of a poured ignitable liquid." (ECF No. 47-9).  Although the motion to strike calls into question Bradshaw's testimony as an expert witness, Bradshaw's conclusion as an expert in cause and origin investigations is "that the fire was intentionally set with an open flame and a poured ignitable liquid."  (ECF no. 47-9).

---

[1] Underwriters has cited the deposition of Tim Reese, who "denied that Mr. Cooper advised him that the building would be lease for private parties."  (ECF No. 47-1, p. 3).  Cooper's response memorandum, on the other hand, avers that Cooper "explain[ed] to Mr. Reese that the tenant had left, but that he still wanted to rent the Property for special events."  (ECF No. 53, p. 2).

Underwriters filed the instant action against Cooper and Hoover on May 27, 2010, seeking a rescission of the insurance policy and a declaratory judgment by this court that there is no coverage under the insurance policy for any of the claims being made by defendants arising out of the fire at the property and that such claims are excluded under the policy. As previously stated, Defendant Hoover has not responded to the Complaint, and an entry of default was entered against him on August 17, 2010. Defendant Cooper, on the other hand, answered the Complaint and counterclaimed for breach of contract and bad faith. Cooper also asserts that he is entitled to attorney's fees.

On December 2, 2011, Underwriters filed a Motion for Summary Judgment Partial. Cooper filed a response to the motion on December 30, 2011. On the same day, he filed a Motion to Strike. On January 17, 2012, Underwriters filed a Response to the Motion to Strike.

## II.     Legal Standard

### A.     Motion for Partial Summary Judgment

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered when a moving party has shown that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Summary judgment should be granted in those cases where it is perfectly clear that there remains no genuine dispute as to material fact and inquiry into the facts is unnecessary to clarify the

application of the law. *McKinney v. Bd. of Trustees of Mayland Community College*, 955 F.2d 924, 928 (4th Cir. 1992). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

    **B.**    **Motion to Strike**

According to Fed. R. Civ. P. 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial."

**III.**    **Analysis**

    **A.**    **Motion for Summary Judgment**

        **1.**    **Rescission**

In its Motion for Summary Judgment Partial, Underwriters argues that it is entitled to rescission of the policy because the undisputed facts prove that the insured made a material misrepresentation of fact in the policy application. Under South Carolina law, in order to rescind a policy of insurance based on a statement made in the insurance application, the insurer must prove:

    (1)    the statement was false;

    (2)    the falsity was known to the applicant;

    (3)    the statement was material to the risk;

    (4)    the statement was made with the intent to defraud the insurer, and

    (5)    the insured relied on the statement when issuing the policy.

*Primerica Life Ins. Co. v. Ingram*, 616 S.E.2d 737, 738 (Ct. App. 2005). Underwriters argues that each of these prongs is met in this case, and, thus, the insurance policy should be rescinded. First, the statements regarding the vacancy of the building and the absence of tax liens and judgments were false, as supported by deposition testimony of Cooper. Second, Cooper knew at the time of the application that those statements were false. Third, Underwriters submits that it is undisputed that the statements were relied upon and that they were material to the risk. According the deposition testimony of an Underwriters representative, "the nightclub could never have been written under the vacant-only program had the insured disclosed even his occasional rental of the facility for parties[,] and Insurance House did not have the discretion to write coverage for property encumbered by tax liens and judgments." (ECF No. 47-1, p. 10). Fourth, Underwriters submits that even in a light most favorable to Cooper, there is no genuine issue of material fact that Cooper made false statements on the insurance policy to defraud Underwriters. Finally, "the evidence is uncontradicted that Underwriters would not have issued the policy had the truth been disclosed" about the vacancy of the building and the existence of liens against Cooper. (ECF No. 47-1, p. 10).

If this court finds that rescission is appropriate in this case, then Underwriters submits that it is entitled to summary judgment on Cooper's counterclaims. If this court rescinds the policy, then Cooper will be missing a necessary element to his breach of contract claim and his bad faith claim. Additionally, if the breach of contract and bad faith claims fail, then Cooper will have nothing on which to base his claim for attorney's fees.

In his Reply in Opposition, Cooper disputes that the requirements for rescission of an insurance policy due to material misrepresentation have all been met. For example, Cooper contends that Underwriters has not provided evidence that in issuing the insurance policy it relied on Cooper's answers in his insurance application. According to Cooper, the testimony of an employee of Underwriters who did not underwrite the policy should not be considered because it is speculation, rather than personal information. Underwriters further argues that there are genuine issues of material fact as to whether Cooper gave false answers with an intent to deceive.

In its Reply Memorandum, Underwriters submits that there is evidence that Underwriters relied on the answers given in the insurance application. Specifically, Underwriters points to the underwriting guidelines, which indicate that the vacancy-only program has specific guidelines, which limit the class of risks that could be bound under the program. Additionally, Underwriters argues that its 30(b)(6) witness was a proper witness and that according to that witness, the policy would never have been issued by Underwriters under the vacancy program if the insured had not represented that the party was, in fact, vacant. Underwriters also submits that there is no evidence that Cooper made false statements without the intent to deceive.

This court finds that there is an issue of material fact as to whether Cooper made false statements on his insurance application with the intent to deceive. "[O]rdinarily whether a misstatement of fact in the application was made with the intent to deceive and defraud the insurer is a question for determination by the jury." *Arnold v. Life Ins. Co.*, 83 S.E.2d 553, 557 (S.C. 1954). "However, where the only reasonable inference warranted

by the evidence is that the policy was procured by fraudulent misrepresentations," a court may grant summary judgment. *Id.*; *see also Floyd v. Ohio Gen. Ins. Co.*, 701 F.Supp. 1177, 1190 (D.S.C. 1988) ("Under South Carolina law, an intent to deceive may be inferred when there is no other reasonable or plausible explanation for the applicant's false representation.").

Underwriters asks this court to find that there is no issue of material fact as to whether Cooper intended to deceive Underwriters by applying for a vacant-only policy and by failing to identify the judgments and liens on the property. Underwriters compares the case to *Winburn v. Minnesota Mutual Life Insurance Co.*, 201 S.E.2d 372 (S.C. 1973), in which the Supreme Court of South Carolina recognized the following:

> Ordinarily, the question of fraud in a case of this kind is for the jury, but we feel that this is one of those rare cases where the only reasonable conclusion from the uncontradicted facts is that the insured intended to deceive and defraud the respondent when she deliberately suppressed the truth and gave false answers as to her health of physical condition and prior medical treatment, of which she had full knowledge.

201 S.E.2d at 376. However, this court finds that the facts of this case are distinguishable from those of Winburn. For example, while it was uncontradicted in *Winburn* that the insured provided false answers, here, Cooper contends that he told Reese about the use of the property, and Reese claims that Cooper told him the property was vacant.

The facts in this case are more akin to other South Carolina cases in which courts have found questions of material fact. In *Primerica Life Insurance Co. v. Ingram*, 616

S.E.2d 737, the South Carolina Court of Appeals found a question of fact as to an insured's intent to defraud where the insured claimed to have disclosed a health condition to the insurer's agents, and the agents failed to include it in the application. (2005). Recently, a District of South Carolina court found a question of fact regarding intent to deceive an insurer where an insurance agent failed to ask an applicant about information required for an insurance application, and the applicant signed the application without reading it over. *Bennett v. Amer. Hallmark Ins. Co.*, No. 5:10-1600-MBS, 2011 WL 2936003, at *5 (Jul. 18, 2011). Because this court finds that there is an issue of material fact as to whether Cooper made false statements on his insurance application with intent to deceive, this court cannot rescind the policy based on material misrepresentation.

### 2. Bad Faith Counterclaim

Regardless of this court's determination on rescission of the insurance policy, Underwriters argues that it is entitled to summary judgment on Cooper's bad faith counterclaim. Under South Carolina law, the elements of bad faith are:

(1) the existence of an enforceable, mutually binding contract of insurance between the parties to the lawsuit;

(2) the insurance carrier's refusal to pay benefits or perform its obligations under the contract;

(3) which results from the insurance carrier's bad faith or unreasonable action that breaches the implied covenant of good faith and fair dealing; and

(4) that proximately causes damage to the insured.

*Crossley v. State Farm Bureau Cas. Ins. Co.*, 415 S.E.2d 393 (1992).  If there is a reasonable ground for contesting a claim, then there is no bad faith.  *Id.* at 397. Underwriters submits that it has not acted unreasonably in contesting Cooper's claim, considering the evidence of arson and the misrepresentations in the policy application. As such, Underwriters submits that all of the elements of bad faith have not been met, and it is entitled to summary judgment on that counterclaim.

In his response, Defendant Cooper failed to address Underwriters's submission that his bad faith claim be dismissed.

Based on the evidence of arson and of misrepresentations in the policy in this case, this court finds that it was reasonable for Underwriters to contest Cooper's claim.  As such, Underwriters's motion for summary judgment is granted, and Cooper's bad faith counterclaim is dismissed.

### B.    Motion to Strike

In his Motion to Strike, Cooper moves the court to strike from the record the Affidavit of Patrick Bradshaw.  Bradshaw is the Richland County Fire Marshall who investigated the fire.  Defendant claims that Bradshaw was never identified as an expert, nor was Defendant given any expert disclosures as required by local rules.  As such, Cooper argues that Plaintiff should not be permitted to use any expert opinions or testimony to supply evidence in its summary judgment motion or going forward. Additionally, Cooper argues that some of the opinions and testimony given by Bradshaw is not based on his personal knowledge and that some of his statements are hearsay. Therefore, Defendant argues that the opinions of Bradshaw are inadmissible evidence.

In response, Underwriters contends that it has disclosed the use of Bradshaw as a witness, but that Underwriters had no anticipation that Bradshaw would testify as a retained witness on behalf of any party. Because Bradshaw is not a retained expert, Underwriters submits that they are not required to produce a written report. Underwriters compares the testimony of Bradshaw "to that of a treating expert physician, who need not prepare a written report, but who may still testify as to his or her opinion of the causation and treatment of injury or disease." (ECF No. 57, p. 3). Underwriters further argues that most of Bradshaw's testimony is based on his own knowledge, with the exception of the fact that the firefighters had forced open the doors to the nightclub. However, Underwriters submits that "[a]s an expert, Mr. Bradshaw is entitled to rely on the reports of third parties, such as the responding firefighters, in coming to his conclusion regarding the cause and origin of the fire."

The rules governing expert witness disclosures changed effective December 1, 2010. Fed. R. Civ. P. 26(a)(2)(B) or "2B" witnesses are those traditional expert witnesses who must prepare a written report (e.g., a witness retained or specially employed to provide expert testimony in the case or one whose duties as a party's employee regularly involves giving expert testimony). The new category of expert witnesses covered by Fed. R. Civ. P. 26(a)(2)(C) or "2C" witnesses are not experts in the traditional sense of being retained specifically to provide expert testimony. Rather, they are witnesses such as a treating physician or an employee who may have certain expert-type information and who may offer some type of expert opinion testimony along with his or her fact testimony. As to these "2C" witnesses, new Rule 26(a)(2)(C) requires a

summary disclosure be made by the attorney (not the witness) of the subject matter on which the witness is expected to present expert testimony and a summary of the facts and opinions to which the witness is expected to testify.

The scheduling order setting forth the deadlines in this case was issued on September 9, 2010, and the deadline for Plaintiff's identification of expert witnesses was established as March 25, 2011.  (ECF No. 21).  As such, the change in Rule 26(a)(2) occurred in the middle of this case—before the parties' disclosures were due but after the scheduling order issuing those deadlines was filed.  Counsel for Underwriters apparently did not make the required summary disclosure.  Because the rule changed after this case had begun, and because Defendant Cooper has some notice of Bradshaw's testimony, this court denies Defendant's Motion to Strike.  This court orders counsel for Underwriters to make the disclosure required by Rule 26(a)(2)(C) within fourteen (14) days of this order.  If Cooper requests additional time to secure a rebuttal witness, this court will grant him leave to do so.

## IV.     Conclusion

Plaintiff's Motion for Partial Summary Judgment is granted, in part, and denied, in part.  As to Plaintiff's request for rescission of the insurance policy at issue in this case, this court finds that there is a genuine issue of material fact as to one element required for rescission.  As such, the court denies to rescind the policy.  As to Plaintiff's request that summary judgment be granted as to Defendant Cooper's counterclaim for bad faith, this court grants the motion.  Accordingly, Defendant Cooper's counterclaim for bad faith is hereby dismissed.

As to Defendant Cooper's Motion to Strike, this court denies the motion. This court orders counsel for Underwriters to make the disclosure required by Rule 26(a)(2)(C) within fourteen (14) days of this order. If Defendant Cooper's counsel requests additional time to secure a rebuttal witness, this court will grant her leave to do so.

IT IS SO ORDERED.

*Joseph F. Anderson, Jr.*

February 21, 2012  
Columbia, South Carolina

Joseph F. Anderson, Jr.  
United States District Judge